IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENNETH KNOX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 09-1075 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | Judge Donetta W. Ambrose |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

### I.   Synopsis

This matter comes before the Court on cross-motions for summary judgment filed by the

parties pursuant to Federal Rule of Civil Procedure 56.  Doc. Nos. 8 & 10.  The Court has

jurisdiction in this case pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  For the reasons that

follow, the Plaintiff's motion for summary judgment will be denied, the Defendant's motion for

summary judgment will be granted, and the decision of the Commissioner of Social Security

("Commissioner") will be affirmed.

### II.   Procedural History

Plaintiff Kenneth Knox ("Knox") protectively filed applications for disability insurance

benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of

the Social Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383(f)] on February 21, 2007,

alleging disability as of October 25, 2006.  Record ("R") at 102, 108, 124.  The applications were

administratively denied on May 25, 2007.  R. at 63, 68.  Knox responded on June 25, 2007, by

filing a timely request for an administrative hearing. R. at 73. On September 8, 2008, a hearing

was held in Morgantown, West Virginia, before Administrative Law Judge Donald T.

McDougall (the "ALJ"). R. at 25. Knox, who was represented by counsel, appeared and

testified at the hearing. R. at 29-52. Testimony was also taken from James Genoa ("Genoa"), an

impartial vocational expert. R. at 52-57. In a decision dated January 5, 2009, the ALJ

determined that Knox was not "disabled" within the meaning of the Act. R. at 12-24. The

Appeals Council denied Knox's request for review on April 30, 2009, thereby making the ALJ's

decision the final decision of the Commissioner in this case. R. at 3. Knox commenced this

action on August 13, 2009, seeking judicial review of the Commissioner's decision.[1] Doc. No. 1.

Knox and the Commissioner filed motions for summary judgment on December 15, 2009, and

January 15, 2010, respectively. Doc. Nos. 8 & 10. These motions are the subject of this

memorandum opinion.

III. **Standard of Review**

This Court's review is limited to determining whether the Commissioner's decision is

"supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d

Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-

weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir.

---

[1]This action is authorized by the first sentence of 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. § 405(g). The record indicates that, on July 28, 2009, the Commissioner extended the time period within which Knox could bring this action to 30 days subsequent to Knox's receipt of the notice providing for the extension. R. at 1. Since this action was brought against the Commissioner within that period of time, it was commenced in a timely manner.

1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of

Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42

U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of

evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565,108 S.Ct. 2541, 101 L.Ed.2d

490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is

supported by substantial evidence, it cannot be set aside even if this Court "would have decided

the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall,

the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364

F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically

determinable basis for an impairment that prevents him [or her] from engaging in any

'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of*

*Health and Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); 42 U.S.C. §§ 423(d)(1),

1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity

"only if his [or her] physical or mental impairment or impairments are of such severity that he [or

she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age,

education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than

simply state factual conclusions. He or she must make specific findings of fact. *Stewart v.*

*Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must

3

consider all medical evidence contained in the record and provide adequate explanations for

disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d

Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated

rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose

of determining whether a claimant is "disabled" within the meaning of the Act. The United

States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will
> not review the claim further. At the first step, the agency will find non-disability
> unless the claimant shows that he is not working at a "substantial gainful activity."
> [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-
> disability unless the claimant shows that he has a "severe impairment," defined as
> "any impairment or combination of impairments which significantly limits [the
> claimant's] physical or mental ability to do basic work activities." §§
> 404.1520(c), 416.920(c). At step three, the agency determines whether the
> impairment which enabled the claimant to survive step two is on the list of
> impairments presumed severe enough to render one disabled; if so, the claimant
> qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the
> list, the inquiry proceeds to step four, at which the SSA assesses whether the
> claimant can do his previous work; unless he shows that he cannot, he is
> determined not to be disabled. If the claimant survives the fourth stage, the fifth,
> and final, step requires the SSA to consider so-called "vocational factors" (the
> claimant's age, education, and past work experience), and to determine whether
> the claimant is capable of performing other jobs existing in significant numbers in
> the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes

omitted).

In an action in which review of an administrative determination is sought, the agency's

decision cannot be affirmed on a ground other than that actually relied upon by the agency in

making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67

4

S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of
> administrative law.  That rule is to the effect that a reviewing court, in dealing
> with a determination or judgment which an administrative agency alone is
> authorized to make, must judge the propriety of such action solely by the grounds
> invoked by the agency.  If those grounds are inadequate or improper, the court is
> powerless to affirm the administrative action by substituting what it considers to
> be a more adequate or proper basis.  To do so would propel the court into the
> domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196.  The United States Court of Appeals for the Third Circuit has

recognized the applicability of this rule in the Social Security disability context.  *Fargnoli v.*

*Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001).  Thus, the Court's review is limited to the four

corners of the ALJ's decision.

**IV.   Discussion**

In his decision, the ALJ determined that Knox had not engaged in substantial gainful

activity subsequent to his alleged onset date.  R. at 17.  Knox was found to be suffering from

severe back pain (with a history of surgery dating back to 1994) and severe neck and hand pain

related to a pinched nerve and carpal tunnel syndrome.  *Id.*  Although these impairments were

deemed to be "severe" within the meaning of 20 C.F.R. §§ 404.1520(a)(4)(ii) and

416.920(a)(4)(ii), they did not meet or medically equal an impairment listed in 20 C.F.R. Part

404, Subpart P, Appendix 1 (the "Listing of Impairments" or, with respect to a single

impairment, a "Listed Impairment" or "Listing").  R. at 21.

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Knox's

residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the

5

claimant has the residual functional capacity to perform light work as defined in
20 CFR 404.1567(b) and 416.967(b). In addition, the claimant has the following
exertional and non-exertional limitations: he must be able to briefly (one to two
minutes) change positions at least every 30 minutes; he can do no work that
requires climbing ladders, ropes, scaffolds, stairs or ramps; he can do now [sic]
more than occasional balancing, stooping, kneeling, crouching or crawling; he can
do no more than occasional twisting of either wrist; and he must be able to miss
up to one day of work per month.

R. at 21. Knox was born on August 21, 1962, making him 44 years old as of his alleged onset

date and 46 years old as of the date of the ALJ's decision. R. at 23, 29. He was classified as a

"younger person" under the Commissioner's regulations. 20 C.F.R. §§ 404.1563(c), 416.963(c).

He had a high school education and an ability to communicate in English. R. at 23, 29-30.

Given the applicable residual functional capacity and vocational assessments, the ALJ

determined that Knox could not return to his past relevant work as a chef, cook or packer. R. at

23, 53-54, 129, 136. Nevertheless, the ALJ concluded that Knox could work as a gate guard,

park aide, credit authorizer or surveillance systems monitor. R. at 24. Genoa's testimony

established that these jobs existed in the national economy for purposes of 42 U.S.C. §§

423(d)(2)(A) and 1382c(a)(3)(B). R. at 55-56.

        In support of his motion for summary judgment, Knox attacks the ALJ's residual

functional capacity assessment and corresponding hypothetical question to Genoa. Doc. No. 9,

pp. 5-17. The Commissioner argues that the ALJ's residual functional capacity assessment was

"supported by substantial evidence" within the meaning of § 405(g). Doc. No. 11, pp. 11-19.

The adequacy of the ALJ's residual functional capacity determination (and corresponding

hypothetical question) is the only issue disputed in this case.

        Knox has a long history of back problems. He underwent a discectomy in 1994. R. at

6

30-31. After the surgery, he was able to continue working as a cook. Nevertheless, on or around

October 25, 2006, Knox "bent the wrong way" while scraping mud and "moving small rocks"

near water lines connected to his apartment, aggravating his earlier back injury. R. at 31. He

was virtually unable to walk for a period of two weeks. *Id.* Within that period of time, his

employer terminated his employment and hired a new cook. R. at 31-32.

Dr. Jill Sharer, Knox's primary care physician, referred Knox to Dr. Frank T. Vertosick, a

neurosurgeon affiliated with Allegheny General Hospital. Knox first saw Dr. Vertosick on

February 20, 2007. R. at 197-198, 334-335. On that occasion, Knox indicated that he was

experiencing "very little pain," but that he feared returning to work because "standing" at his job

could easily exacerbate his symptoms. R. at 197, 334. After examining Knox on April 4, 2007,

Dr. Vertosick observed that Knox's pain was "relieved by lying down and worsened by standing

for more than one to two hours." R. at 336, 374. On May 9, 2007, Dr. Vertosick reported that

Knox's pain was "modest" except when he had to stand or walk "for long periods of time." R. at

337, 373. Dr. Vertosick suggested that Knox begin a "self-motivated exercise program"

involving activities "such as walking on a level track field" in order "to build up his tolerance a

little bit." *Id.*

Knox's argument is primarily premised on a "medical source statement" completed by

Dr. Vertosick on June 12, 2007. In that statement, Dr. Vertosick reported that Knox had no

capacity to work. R. at 340. Dr. Vertosick indicated that Knox could lift objects weighing less

than 10 pounds on only an occasional basis, and that he could "never" lift objects weighing 10

pounds or more. R. at 341. Dr. Vertosick further opined that Knox could stand or walk for "less

than" two hours, and sit for "less than" six hours, during the course of an eight-hour workday.

7

*Id.* In addition, Dr. Vertosick noted that Knox would need periodic rest periods throughout the course of a workday because of fatigue and "severe incapacitating pain," and that he could "never" engage in postural activities such as climbing, balancing, stooping, kneeling, crouching and crawling. R. at 341-342. According to Dr. Vertosick, Knox also had limited pushing, pulling, reaching and handling abilities. R. at 342. Furthermore, Dr. Vertosick stated that Knox needed to avoid exposure to poor ventilation, heights, moving machinery, vibration, temperature extremes and chemicals. *Id.*

Dr. Vertosick's opinion, if credited, would preclude Knox from engaging in even sedentary work.[2] The ALJ found Dr. Vertosick's assessment to be "much too extreme to be supported by the objective medical evidence." R. at 22. The ultimate residual functional capacity determination made by the ALJ was primarily based on an assessment made on April 24, 2007, by Dr. Mary Ellen Wyszomierski, a nonexamining medical consultant. After reviewing Knox's medical records, Dr. Wyszomierski opined that Knox could occasionally lift or carry objects weighing up to 20 pounds, frequently lift or carry objects weighing up to 10 pounds, and stand, walk or sit for up to six hours during the course of an eight-hour workday.[3] R. at 229.

---

[2]Under the Commissioner's regulations, "[s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 416.967(a). Although a sedentary job generally involves sitting, an employee holding such a job is usually required to stand or walk on an occasional basis. *Id.*

[3]The regulations defining the term "light work" provide:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b). Dr. Wyszomierski's assessment of Knox's work-related capacities was

She further indicated that Knox was limited to only occasional climbing, balancing, stooping, kneeling, crouching and crawling. R. at 230. According to Dr. Wyszomierski, Knox had no manipulative, visual, communicative or environmental limitations. R. at 230-231.

The ALJ gave Dr. Wyszomierski's consultative opinion "significant weight" in determining that Knox could engage in a limited range of light work. R. at 22. Knox assails the ALJ for crediting a report supplied by a nonexamining medical consultant over a report supplied by a treating physician. Doc. No. 9, pp. 6-13. An opinion rendered by a nonexamining medical consultant is ordinarily not regarded as "substantial evidence" when it is contradicted by a well-supported opinion provided by a treating physician. *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008). Nevertheless, an administrative law judge may credit the opinion of a nonexamining medical consultant over that of a treating physician under circumstances in which the treating physician's opinion is "internally contradictory." *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

In this case, the Court need not determine whether Dr. Wyszomierski's opinion was *alone* sufficient to warrant the rejection of Dr. Vertosick's opinion, since the ALJ's ultimate determination was also based on other evidence contained in the record. On September 4, 2007, Dr. Vertosick's partner, Dr. Richard Prostko, referred Knox to Dr. Michael J. Platto. R. at 369. Dr. Platto examined Knox on September 18, 2007. R. at 291, 315, 389, 410. On that occasion, Dr. Platto opined that Knox was "appropriate for a light duty-type job," and that he could occasionally lift objects weighing up to twenty-five pounds. R. at 292, 316, 390, 411. One month later, Robyn Stechly ("Stechly"), a certified registered nurse practitioner employed by Dr.

---

consistent with that of an individual capable of performing a limited range of light work. R. at 229-231.

Platto, indicated that Knox was undergoing "high level physical therapy" that was designed to get him to a 50-pound lifting level. R. at 290. As of November 12, 2007, Knox was able to "waist lift" 31.5 pounds ten times, and to leg press 110 pounds. R. at 289, 328, 392, 413. By December 10, 2007, he was "waist lifting" 34 pounds. R. at 288, 325, 393, 414. On January 7, 2008, Knox informed Stechly that he had lifted objects weighing up to 39 pounds. R. at 287, 332, 394, 415. Knox also expressed a desire "to go back to work." *Id.* Knox reported on February 4, 2008, that he was lifting 41 pounds "floor to waist and horizontal," and that he was hoping to find a job that would not require much "bending at the waist." R. at 286, 323, 416.

Knox's condition continued to improve to the point where he could lift up to 46 pounds "floor to waist and horizontal." R. at 285. On February 25, 2008, Knox aggravated his back injury while helping a neighbor carry a 200-pound television. *Id.* In the immediate aftermath of this incident, Knox had "trouble doing any kind of lifting." R. at 284, 331, 395, 417. Nevertheless, on April 14, 2008, Dr. Platto indicated that Knox was capable of performing medium work that required him to occasionally lift objects weighing up to 50 pounds, provided that he be limited to only occasional bending at the waist and be afforded the opportunity to "change positions" or "stretch" every 30 minutes.[4] R. at 283.

Knox told Dr. Platto on July 14, 2008, that walking, sitting or "even lying down too long" would exacerbate his pain. R. at 282. The next day, Knox was examined by Dr. Prostko. R. at 384, 405. Knox explained that his back condition had worsened after the television-lifting incident of February 25, 2008. *Id.* Knox also expressed disagreement with Dr. Platto's view that

---

[4]Under the Commissioner's regulations, "[m]edium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

he could perform medium work, indicating that he was both incapable of returning to work and reluctant to seek follow-up treatment with Dr. Platto. R. at 385, 406. A magnetic resonance imaging ("MRI") scan was ordered to determine the extent to which Knox's back condition had deteriorated. *Id.* The MRI scan, however, revealed no changes subsequent to a previous MRI scan reviewed by Dr. Vertosick in 2007. R. at 386, 407. Dr. W. Michael Fussell, a physician affiliated with the Interventional Pain Institute, gave Knox an epidural steroid injection in September 2008, but the injection reportedly failed to alleviate Knox's back pain. R. at 420.

Subsequent to the television-lifting incident, Knox attempted to perform job-related tasks in connection with a program coordinated by the Office of Vocational Rehabilitation ("OVR"). Knox's OVR records indicate that, on some occasions, he was able to stand and sit as needed. R. at 427. On April 21, 2008, Knox reported that he was able to do his assigned job, that "everything was fine," and that "his back was not hurting" badly. R. at 428. On other occasions, Knox was "too sore" to work. R. at 426, 430. Julie Jindra ("Jindra"), an OVR case manager, noted on June 10, 2008, that Knox had "much difficulty with standing or sitting" for longer than two to three hours. R. at 434. Jindra had previously indicated that Knox could work only if an employer were willing to limit his shift to three hours per day. R. at 435.

At the hearing, the ALJ asked Knox how long he could walk without having to stop. R. at 34. Knox responded by saying that he could walk for "almost two hours" inside of a grocery store before losing feeling in his leg. R. at 34-35. He testified that he could sit for about two hours, at which point he would either "have to get up and move" or "go lay down." R. at 35. He explained that a pinched nerve in his neck would occasionally cause his fingers to "go numb." *Id.* According to Knox, he had been unable to cut a piece of pork a few days before the hearing

because of this impairment. R. at 36-37. Although Knox also testified that he could never lift

objects weighing 10 pounds or more, he acknowledged that he was merely restating to the ALJ

the same limitation that had been identified in Dr. Vertosick's medical source statement of June

12, 2007. R. at 37-38. Knox's counsel expressly referenced Exhibit 12F, which was Dr.

Vertosick's medical source statement, when the ALJ inquired as to where the lifting restriction

had been recorded. R. at 38.

Relying on statements in *Beckett v. Leavitt*, 555 F.Supp.2d 512, 526 (E.D.Pa. 2008), and

*Hook v. Bowen*, 677 F.Supp. 305, 306 (M.D.Pa. 1988), indicating that a court can consider

evidence contained in the administrative record but not expressly mentioned in an administrative

law judge's decision in determining whether that decision is "supported by substantial evidence,"

the Commissioner argues that the standard enunciated by the Supreme Court in *Chenery Corp.* is

not applicable to proceedings brought under § 405(g). Doc. No. 11, p. 3, n. 1. This argument is

squarely foreclosed by *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001), in which the

United States Court of Appeals for the Third Circuit applied that standard in the Social Security

disability context. Even if the Court may review *evidence* contained in the record in order to

trace the path of the ALJ's reasoning, *Fargnoli* does not permit the judicial substitution of an

otherwise adequate *rationale* justifying affirmance for the rationale actually reflected in the

ALJ's decision. *Fargnoli*, 247 F.3d at 44, n. 7. *Fargnoli*, however, does not require an

administrative law judge to specifically reference "every relevant treatment note" in his or her

decision. *Id.* at 42. Evidence obviously lacking in probative value can be implicitly rejected

without explanation. *Johnson v. Commissioner of Social Security*, 529 F.3d 198, 203-205 (3d

Cir. 2008). What matters is not how an administrative opinion is organized, but rather whether

12

meaningful judicial review of that opinion is possible. *Poulos v. Commissioner of Social Security*, 474 F.3d 88, 93 (3d Cir. 2007). A "comprehensive explanation" need not always accompany a decision to reject a piece of probative evidence, since "a sentence or short paragraph would probably suffice" in most instances. *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).

Although the ALJ did not expressly rely on Dr. Platto's opinion concerning Knox's ability to perform light or medium work in rejecting Dr. Vertosick's contrary opinion, the ALJ explicitly referenced "specific testing" indicating that Knox's functional abilities appeared to "allow for lifting at more than the light work level." R. at 22. This statement in the ALJ's opinion is an obvious reference to Dr. Platto's treatment notes, which regularly recorded Knox's ability to lift or carry objects weighing in excess of 20 pounds. R. at 283, 285-289. While *Fargnoli* does not permit the Court to review the evidence of record in order to establish an alternative rationale for affirming the ALJ's decision, it also does not require the Court to read the ALJ's opinion in a vacuum. A close examination of the record reveals that the ALJ relied on the opinions of both Dr. Wyszomierski and Dr. Platto in formulating his residual functional capacity assessment. The link between Dr. Platto's opinion and the ALJ's ultimate residual functional capacity determination is even more clear in light of the limitation requiring that Knox be able to "change positions" every 30 minutes, which can be traced directly to Dr. Platto's treatment note of April 14, 2008. R. at 21, 283. It was in that treatment note that Dr. Platto indicated that Knox could perform medium work. R. at 283. Contrary to Knox's argument, the ALJ did not reject the opinion of a treating physician *solely* on the basis of a contrary opinion provided by a nonexamining medical consultant. Doc. No. 9, pp. 10-13. Like Dr. Vertosick, Dr.

Platto was a *treating* physician.

The ALJ's residual functional capacity determination was more limiting than the consultative assessment provided by Dr. Wyszomierski. Although Dr. Wyszomierski found Knox to be capable of climbing on an occasional basis, the ALJ concluded that he could "do no work" requiring the climbing of ladders, ropes, scaffolds, stairs or ramps. R. at 21, 230. While Dr. Wyszomierski found no manipulative limitations, the ALJ credited Knox's testimony by concluding that he could twist either wrist on only an occasional basis. *Id.* Moreover, the ALJ's residual functional capacity assessment was significantly more limiting than that provided by Dr. Platto. Dr. Platto indicated that Knox could perform a range of *medium* work requiring only occasional bending at the waist, and permitting him to briefly change positions every half-hour. R. at 283. The ALJ determined that Knox could perform only a range of *light* work that did not require the performance of tasks precluded by Dr. Platto's assessment, that required absolutely no climbing, and that required only occasional balancing, stooping, kneeling, crouching, crawling, or the twisting of either wrist. R. at 21.

Because Knox had actually engaged in activities that would have been precluded by Dr. Vertosick's assessment of June 12, 2007, the ALJ had good reason to find that assessment to be "much too extreme to be supported by the objective medical evidence." R. at 22. It was the prerogative of the ALJ to conclude that Dr. Vertosick's opinion was outweighed by more probative evidence contained in the record. *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985). In this context, the Court must accord deference to the ALJ's "evaluation of the evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions." *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 506 (3d Cir. 2009). Even though Jindra

14

opined that Knox could work on only a part-time basis, the Commissioner correctly points out that she was not an "acceptable medical source" under the applicable regulations.[5] 20 C.F.R. §§ 404.1513(a), 416.913(a). Furthermore, the ALJ partially accounted for Jindra's primary concern (i.e., Knox's occasional inability to complete a workday) by incorporating a monthly absence into his residual functional capacity assessment. R. at 21. Consequently, the Court is convinced that the ALJ's residual functional capacity determination was "supported by substantial evidence." 42 U.S.C. § 405(g).

Knox argues that the ALJ failed to incorporate all of his limitations within the hypothetical question posed to Genoa at the hearing. Doc. No. 9, pp. 14-16. This argument generally collapses with the argument concerning the residual functional capacity assessment itself, since the ALJ was only required to include Knox's *credibly established* limitations within the hypothetical question. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Having reviewed the transcript of the administrative hearing, the Court notes that the ALJ's hypothetical question did not expressly provide for the monthly absence reflected in his ultimate residual functional capacity determination. R. at 21, 54-55. Nevertheless, in response to a follow-up question posed by the ALJ, Genoa testified that the jobs that he had previously identified could be performed by an individual who needed to miss work "between one and two days per month." R. at 56. Genoa's testimony was sufficient to satisfy the Commissioner's burden at the fifth step of the sequential evaluation process, since the jobs referenced at the hearing did not require the

---

[5]The Court does not mean to suggest that Jindra's notes are wholly lacking in evidentiary value. The Commissioner's regulations expressly provide for the consideration of evidence supplied by individuals who are not considered to be "acceptable medical sources." 20 C.F.R. §§ 404.1513(d), 416.913(d). Jindra's notes are not "incompetent evidence." *Williams v. Sullivan*, 970 F.2d 1178, 1185, n. 5 (3d Cir. 1992). In any event, however, the conclusions reflected in those notes were sufficiently lacking in probative value to warrant their implicit (rather than explicit) rejection by the ALJ. *Johnson v. Commissioner of Social Security*, 529 F.3d 198, 203-205 (3d Cir. 2008).

performance of tasks exceeding Knox's functional limitations.[6]  *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003)("At the fifth step, the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, she can perform work that exists in significant numbers in the regional or national economy.")(footnote omitted).  Accordingly, the Court has no basis for setting aside the ALJ's decision.

## V.   Conclusion

"Substantial evidence" supported the ALJ's finding that, during the relevant period of time, Knox retained the residual functional capacity to engage in a limited range of light work. Therefore, Knox's motion for summary judgment will be denied, and the Commissioner's motion for summary judgment will be granted.  Pursuant to the fourth sentence of § 405(g), the administrative decision of the Commissioner will be affirmed.

---

[6]In order for a vocational expert's testimony to constitute "substantial evidence" of the existence of jobs in the national economy consistent with a claimant's residual functional capacity, the administrative law judge's hypothetical question to the vocational expert must "adequately convey" all of the claimant's limitations. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004).  If a particular limitation is omitted from the question, there is a risk that the vocational expert will identify jobs that would be precluded by that limitation. *Burns v. Barnhart*, 312 F.3d 113, 123-124 (3d Cir. 2002).  In this case, however, the ALJ specifically inquired as to how often an individual holding a position identified by Genoa would be permitted to miss work.  R. at 56.  Genoa responded by stating that such an individual could be absent "between one and two days per month." *Id.*  The ALJ determined that Knox's impairments would only necessitate one absence per month.  R. at 21.  Therefore, the Court can clearly ascertain that Genoa did not identify jobs that were inconsistent with Knox's residual functional capacity.

16

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **KENNETH KNOX,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 09-1075** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | **Judge Donetta W. Ambrose** |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY,** ) | |
| ) | |
| **Defendant.** ) | |

## ORDER

AND NOW, this _26th_ day of _March_, 2010, for the reasons set forth in the

foregoing memorandum opinion, IT IS HEREBY ORDERED that the Plaintiff's Motion for

Summary Judgment (Doc. No. 8) is **DENIED**, and that the Defendant's Motion for Summary

Judgment (Doc. No. 10) is **GRANTED**. Pursuant to 42 U.S.C. § 405(g), the administrative

decision of the Commissioner of Social Security is hereby **AFFIRMED**.

BY THE COURT:

_Donetta W. Ambrose_
Donetta W. Ambrose
United States District Judge

cc:    All counsel of record

17